UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING
CHEYENNE DIVISION

| | |
|---|---|
| DR. FREDERICK WILLIAM "ERIC" CUBIN III,<br><br>*Plaintiff*,<br><br>v.<br><br>MARK GORDON, in both his personal and official capacities as Governor of Wyoming,<br><br>*Defendant*. | Case No. 1:24-cv-164<br><br>**COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF AND MONETARY DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff Dr. Eric Cubin is an experienced and accomplished Wyoming-licensed physician who also served on the Wyoming Board of Medicine until April of this year.

2. On February 28, 2024, as a private citizen, Dr. Cubin sent an email to the entire Wyoming House of Representatives, in which he expressed his personal views in support of a proposed bill (known as "Chloe's Law") and criticized the Wyoming Medical Society's public position against the bill.

3. Chloe's Law regulates certain gender-affirming surgeries for minors. Chloe's Law—for which Dr. Cubin expressed his personal support—eventually passed and became law.

4. In his February 28 email to the legislators, Dr. Cubin stated: "I feel the need to advocate on my own behalf by coming to you directly with this information," and

1

that he was speaking "[f]rom the perspective of a Wyoming doctor who actually practices medicine at the very hospital where he was born."

5. On April 22, 2024, in response to Dr. Cubin's email to legislators—and despite signing Chloe's Law after it passed—Defendant Mark Gordon, the Governor of Wyoming, removed Dr. Cubin from the Wyoming Board of Medicine. Governor Gordon explicitly cited Dr. Cubin's email to the House of Representatives in support of Chloe's Law as the reason for his removal.

6. In removing Dr. Cubin from the Wyoming Board of Medicine for expressing his personal views to the House of Representatives on a matter of public concern—Chloe's Law—Governor Gordon unlawfully retaliated against Dr. Cubin in violation of his First Amendment free speech rights and right to petition.

7. This lawsuit seeks to vindicate Dr. Cubin's free speech rights and right to petition under the First Amendment of the U.S. Constitution, 42 U.S.C. § 1983, and the Wyoming State constitution.

## PARTIES

8. Plaintiff Frederick William "Eric" Cubin III, M.D. is a citizen of Wyoming and resides in Casper, Wyoming. He is a licensed physician in the state of Wyoming and was a member of the Wyoming Board of Medicine from early 2024 until his removal on April 22, 2024.

9. Defendant Mark Gordon is the Governor of Wyoming. Governor Gordon's office is located in Cheyenne, the capital and seat of government for the State of Wyoming. Dr. Cubin is suing Governor Gordon in both his personal and official

capacities. At all relevant times, Governor Gordon was acting under color of State law as the Governor of Wyoming.

## JURISDICTION AND VENUE

10. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this case raises federal claims in Counts I and II arising under 42 U.S.C. § 1983 and the First Amendment of the United States Constitution. The Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over the Wyoming State constitutional claim in Count III because it is so related to the other federal claims that form part of the same case or controversy under Article III of the Constitution.

11. Plaintiff brings his claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, Federal Rules of Civil Procedure 57 and 65, *Ex parte Young*, 209 U.S. 123 (1908), and the general legal and equitable powers of this Court. Plaintiff also seeks monetary damages as relief.

12. Venue is proper in this Court because Defendant's State government office is located in the District of Wyoming, Cheyenne Division, 28 U.S.C. § 1391(b)(1), and a substantial part of the events giving rise to Plaintiff's claims occurred in this district, 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

### A. The Wyoming Board of Medicine

13. The Wyoming Board of Medicine (the "Board") is responsible for issuing and renewing licenses for physicians and other medical practitioners in Wyoming. Wyo. Stat. Ann. § 33-26-202.

14. The Board oversees medical regulation, compliance, and discipline. Its duties include ensuring that physicians adhere to state laws governing medical practice, investigating complaints against medical professionals, conducting hearings, and taking disciplinary actions such as revoking or suspending medical licenses. *Id.*

15. The Board typically consists of eight members, including five physicians.

16. Members of the Board receive compensation for their service and are paid in the same manner and amount as members of the Wyoming legislature in accordance with State law. Wyo. Stat. Ann. § 33-26-203.

17. The members of the Board are appointed by the Governor of Wyoming, with the advice and consent of the State senate. Wyo. Stat. Ann. § 33-26-201.

18. Board members "shall serve at the pleasure of the governor." *Id.*

19. "Board members shall serve four (4) year terms. No board member shall serve more than three (3) consecutive terms." Wyo. Stat Ann. § 33-26-201(b).

20. Governor Gordon appointed Dr. Cubin to the Board in or around February of 2024.

21. Dr. Cubin's term on the Board was to run through 2028 in accordance with Wyoming law.

**B. Chloe's Law**

22. In early 2024, the Wyoming legislature was considering Senate File 99, also known as "Chloe's Law," which would prohibit certain gender-affirming procedures for minors in Wyoming.

23. Chloe's Law was named after Chloe Cole, an 18-year-old who began taking cross-sex hormones at 13 and underwent a double mastectomy at 15 in an attempt to transition from female to male.[1]

24. Chloe has since detransitioned and is deeply regretful of the gender-affirming care that medical professionals recommended to her family.[2]

25. Chloe testified before the Wyoming legislature, urging Wyoming to take a stand against gender-affirming surgeries, stating, "I didn't deserve this," and "No child in Wyoming deserves to be put through these cruelties or hardships."[3]

26. Additionally, a second detransitioner, Luka Hein, testified in support of Chloe's Law. At 16, Luka underwent surgery and hormone treatment. She now experiences ongoing physical complications and worries about her fertility. Luka testified that medical professionals coerced her parents into irreversible procedures and advocated for protecting minors from hasty and potentially harmful medical interventions.[4]

---

[1] Leo Wolfson, *National Activist Chloe Cole Testifies Against Transgender Treatments For Minors In Wyoming,* Cowboy State Daily (Feb. 21, 2024), *available* at https://cowboystatedaily.com/2024/02/21/chloes-law-namesake-testifies-for-a-wyoming-ban-on-transgender-treatments-for-minors/ (last visited Aug. 27, 2024).

[2] *Id.*

[3] *Id.*

[4] Clair McFarland, *'Groomed and Preyed Upon:' Detransitioner Who Had Double Mastectomy At 16 Shares Regret,* Cowboy State Daily (Feb. 3, 2023), *available* at https://cowboystatedaily.com/2023/02/03/groomed-and-preyed-upon-detransitioner-who-had-double-masectomy-at-16-shares-regret/ (last visited Aug. 27, 2024).

27. The Wyoming Medical Society ("WMS") publicly opposed Chloe's Law.

28. WMS is a voluntary organization that physicians are not required to join.

29. WMS publicly touts itself as a professional organization that serves the interests of medical practitioners in Wyoming.[5]

**C. Dr. Cubin's Email to the Wyoming House of Representatives**

30. Dr. Cubin, himself a member of WMS, disagreed with the organization's public opposition to Chloe's Law.

31. On February 21, 2024, Dr. Cubin emailed Sheila Bush, Executive Director of WMS, expressing his concerns about WMS's position on Chloe's Law.

32. Dr. Cubin thought it unlikely that WMS's stance reflected views of the vast majority of its members, and asked whether WMS could present physicians' views on both sides of the issue regarding Chloe's Law.

33. The day after Dr. Cubin sent his email, Ms. Bush responded to him, explaining WMS's position, but did not address his request for a more balanced presentation on Chloe's Law.

34. The following day, Dr. Kristopher Schamber, President of the WMS Board of Trustees, emailed Dr. Cubin, reiterating WMS's position but also failing to respond to Dr. Cubin's concerns that WMS did not fairly represent Wyoming's physicians.

---

[5] *See* https://www.wyomed.org/about/ (last visited Aug. 15, 2024).

35. On February 25, Dr. Cubin sent a detailed email to Dr. Schamber and the WMS Board, expressing his disagreement with WMS's position on Chloe's Law and once again requesting that WMS poll its physician members on the issue.

36. In further email exchanges with WMS leadership, Dr. Cubin again requested that WMS adjust its position to a more neutral stance.

37. On February 28, 2024, after receiving no satisfactory response from WMS leadership, Dr. Cubin sent an email from his personal email account to the entire Wyoming House of Representatives expressing his personal views in support of Chloe's Law and criticizing WMS's position against it. A true and accurate copy of that email is attached as **Exhibit 1**.

38. Dr. Cubin made very clear in his email that he was representing himself, and not WMS or the Wyoming Board of Medicine; he wrote that he was writing "from the perspective of a Wyoming doctor who actually practices medicine at the very hospital where he was born."

39. In his email, Dr. Cubin stated that he believed WMS was not accurately representing the views of most Wyoming physicians.

40. Dr. Cubin did not claim in his email to be speaking on behalf of the Board.

41. As part of his official duties as a member of the Board, Dr. Cubin is not required to communicate by email, or otherwise, with the Wyoming House of Representatives.

42. Dr. Cubin's email to the Wyoming House of Representatives as a private citizen did not cause any disruption to the normal functioning of the Board in carrying out its official duties and obligations under Wyoming law.

43. Chloe's Law, Senate File 99, overwhelmingly passed, was signed by Governor Gordon, and enacted into law. *See* S.F. 99, 67th Leg., Budget Sess. (2024) (enacted).

**D. Governor Gordon's Response to Dr. Cubin's Speech**

44. On April 22, 2024, Governor Gordon sent a letter to Dr. Cubin stating that Gordon was removing Cubin from the Wyoming Board of Medicine. Attached as **Exhibit 2** is a true and correct copy of Governor Gordon's letter.

45. In his letter, Governor Gordon explicitly cited Dr. Cubin's "email to the members of the House of Representatives during this last legislative session regarding SF0099" as the reason for Dr. Cubin's removal from the Board.

46. Governor Gordon stated that Dr. Cubin's comments "could give doctors, who are licensed by the Board of Medicine, a reason to be concerned that you might use your position to advocate for a particular position when considering matters that should be considered absent an agenda or prejudice."

47. Governor Gordon wrote that "as an individual member of the Board, you would not be entitled to speak for the Board unilaterally."

48. Again, contrary to Governor Gordon's email, Dr. Cubin had not claimed to speak for the Board in his email to the Wyoming House of Representatives.

49. Governor Gordon stated in his letter that he was removing Dr. Cubin from the Board of Medicine, claiming that he "elected to relieve that member of the constraints board membership requires."

50. Governor Gordon's removal of Dr. Cubin from the Board for his email to the House of Representatives was unjustified and wholly without merit because his email to the House advocating for Chloe's Law did not result in the inefficient operation of the Board.

51. For example, previous Board members have actually testified before the Wyoming legislature on controversial medical issues—far more direct advocacy than Dr. Cubin's mere email to members of the House of Representatives—and never received similar retribution from the Governor.

52. Indeed, former Board member, Rene Hinkle, testified before the Wyoming legislature against giving life-saving care to infants born alive, and she was reappointed by the Governor to the Board after her testimony.[6]

53. But for his email to the House of Representatives expressing his personal views on Chloe's Law, Dr. Cubin would still be a member of the Wyoming Board of Medicine.

---

[6] Jonathan Lange, *The Board Of Medicine Exists To Protect Patients, Not Practitioners*, Cowboy State Daily (May 31, 2024), *available* at https://cowboystatedaily.com/2024/05/31/jonathan-lange-the-board-of-medicine-exists-to-protect-patients-not-practitioners/ (last visited Aug. 28, 2024).

54. As a member of the Board, Dr. Cubin always fulfilled his duties and obligations of overseeing medical professionals' licensure in a professional, unbiased, and clinical manner based on the merits alone.

55. Governor Gordon's removal of Dr. Cubin from the Board of Medicine has caused Dr. Cubin economic injury and harm to his professional reputation.

56. After being forced by Governor Gordon to resign from the Board, Dr. Cubin verbally resigned, which Governor Gordon accepted and made effective as of April 22, 2024, the same day as Gordon's letter to Dr. Cubin removing him from the Board.  Attached as **Exhibit 3** is a copy of Governor Gordon's acceptance letter.

## CLAIMS FOR RELIEF

### COUNT ONE
### 42 U.S.C. § 1983 – First Amendment Retaliation
### (Against Governor Gordon in his personal and official capacities)

**Governor Gordon retaliated against Dr. Cubin because he exercised his First Amendment Free Speech Rights in communicating with the Wyoming House of Representatives and advocating for Chloe's Law**

57. Dr. Cubin incorporates the preceding paragraphs by reference.

58. The First Amendment states, "Congress shall make no law . . . abridging the freedom of speech." U. S. Const. amend. I.

59. In *Garcetti v. Ceballos*, the United States Supreme Court held that "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." 547 U.S. 410, 417 (2006).

60. The Tenth Circuit has affirmed that "[w]hen government employees speak on matters of public concern, 'they must face only those speech restrictions that are

necessary for their employers to operate efficiently and effectively.'" *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1202 (10th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 411).

61. While Dr. Cubin was appointed, and served at the pleasure and will of the Governor, the Tenth Circuit has held that the fact the "employment position was terminable at will does not diminish [a] First Amendment claim." *Andersen v. McCotter,* 100 F.3d 723, 726 (10th Cir. 1996).

62. The Supreme Court has also emphasized that "even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons . . . [it] may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)); *see also Andersen,* 100 F.3d at 726.

63. To determine whether a government employee's speech is protected by the First Amendment, courts in the Tenth Circuit apply the *Garcetti/Pickering* five-step framework. *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014).

64. The first three steps of that framework consider: (1) whether the individual's speech occurred within the scope of employment; (2) whether the speech was about a matter of public concern; and (3) whether the government's interests in promoting efficiency outweigh the plaintiff's free speech rights. *Id.*, at 1165.

65. The "ultimate question" in determining whether an individual's speech was within the scope of his employment is "whether the employee speaks as a citizen or

instead as a government employee—an individual acting 'in his or her professional capacity.'" *Brammer-Hoelter*, 492 F.3d at 1203 (quoting *Garcetti*, 574 U.S. at 422).

66. Political speech "undoubtedly" does "touch upon a matter of public concern." *Bass v. Richards*, 308 F.3d 1081, 1089 (10th Cir. 2002).

67. And Chloe's Law was a matter of public concern.

68. In his email to Wyoming legislators, Dr. Cubin made clear that he was speaking as a private citizen—*not* in his professional role as a member of the Board.

69. Dr. Cubin's speech (and email) was political in nature because it touched upon a pending piece of legislation.

70. Dr. Cubin's email did not in any way impair the efficiency or functioning of the Wyoming Board of Medicine.

71. The final two *Garcetti/Pickering* factors are about causation: (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct. *Trant*, 754 F.3d at 1165.

72. As stated above, Governor Gordon explicitly wrote to Dr. Cubin that Dr. Cubin's "email to the members of the House of Representatives during this last legislative session regarding SF0099" was the reason why he removed Dr. Cubin from the Board of Medicine.

73. But for Dr. Cubin exercising his First Amendment right to engage in political speech as a private citizen, Governor Gordon would not have removed Dr. Cubin from his position on the Board.

74. Governor Gordon's act of sending his **Exhibit 2** letter to Dr. Cubin would cause a person on the Board of ordinary firmness to refrain from further speaking out in the future to the Wyoming House of Representatives as a private citizen on a matter of public concern, such as pending legislation like Chloe's Law.

75. Because Governor Gordon deprived Dr. Cubin of his First Amendment right to free speech, Dr. Cubin is entitled to a preliminary and permanent injunction ordering Governor Gordon in his official capacity to restore Dr. Cubin to his position on the Board.

76. Dr. Cubin is further entitled to a declaratory judgment declaring that Governor Gordon in his official capacity violated Dr. Cubin's First Amendment free speech rights under the *Garcetti/Pickering* framework.

77. Dr. Cubin is also entitled to monetary damages against Governor Gordon in his personal capacity for the deprivation of Dr. Cubin's First Amendment free speech rights.

78. The Tenth Circuit has stated that "[t]he law has been clearly established since 1968 that public employees may not be discharged in retaliation for speaking on matters of public concern, absent a showing that the government employer's interest in the efficiency of its operations outweighs the employee's interest in the speech." *Andersen,* 100 F.3d at 729.

79. Therefore, at the time of Governor Gordon's letter to Dr. Cubin, it was clearly established law under the Tenth Circuit's application of the *Garcetti/Pickering* framework that Governor Gordon could not take any adverse action against Dr.

Cubin for his email and protected speech that he expressed to the Wyoming House of Representatives in advocating for Chloe's Law.

## COUNT TWO
### 42 U.S.C. § 1983 – First Amendment Retaliation
### (Against Governor Gordon in his personal and official capacities)

**Governor Gordon retaliated against Dr. Cubin because he exercised his First Amendment right to petition the Wyoming House of Representatives by expressing his ideas, hopes, and concerns about Chloe's Law**

80. Dr. Cubin incorporates the preceding paragraphs by reference.

81. The Supreme Court has affirmed that the "right to petition [is] one of the most precious of the liberties safeguarded by the Bill of Rights." *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002) (internal quotation marks omitted).

82. To establish a claim of unlawful retaliation for exercising their First Amendment right to petition, a government employee must show "(a) he or she was engaged in constitutionally protected activity; (b) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (c) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Van Deelen v. Johnson*, 497 F.3d 1151, 1155-56 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir.2000)).

83. The right to petition "allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives[.]" *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011). This fundamental right is "not limited to petitions lodged under formal procedures." *Id.* at 393.

84. Therefore, Dr. Cubin's email to the Wyoming House of Representatives expressing his ideas and hopes about Chloe's Law and concerns about testimony opposing Chloe's Law is constitutionally protected activity.

85. Serving on the Board provided Dr. Cubin with a leadership position in medical ethics, recognition within the medical community, and compensation in the same manner as members of the Wyoming House.

86. By being removed from the Board, Dr. Cubin suffered injury, including the loss of personal, professional, and financial benefits associated with a Board position.

87. Governor Gordon's act of sending the **Exhibit 2** letter to Dr. Cubin would cause a person on the Board of ordinary firmness to refrain from further exercising their right in the future to petition the Wyoming House of Representatives as a private citizen on a matter of public concern, such as pending legislation like Chloe's Law.

88. As described above, Governor Gordon explicitly stated in his **Exhibit 2** letter that his adverse action removing Dr. Cubin from the Board was motivated by his email petitioning the House of Representatives to vote in favor of Chloe's Law.

89. Because Governor Gordon deprived Dr. Cubin of his First Amendment right to petition, Dr. Cubin is entitled to a preliminary and permanent injunction ordering Governor Gordon in his official capacity to restore Dr. Cubin to his position on the Wyoming Medical Board.

90. Dr. Cubin is further entitled to a declaratory judgment declaring that Governor Gordon in his official capacity violated Dr. Cubin's First Amendment right to petition.

91. Dr. Cubin is also entitled to monetary damages against Governor Gordon in his individual capacity for the deprivation of his First Amendment right to petition.

92. At the time of Governor Gordon's **Exhibit 2** letter to Dr. Cubin, it was clearly established law under Supreme Court precedent that the First Amendment right to petition "allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives[.]" *Borough*, 564 U.S. at 388.

93. Therefore, Governor Gordon could not take any adverse action against Dr. Cubin for exercising his right to petition the Wyoming House of Representatives about Chloe's Law.

## COUNT THREE
**(Against Governor Gordon in his official capacity)**
**Wyoming State Constitution, Article I, Sections 20 & 21**

**Governor Gordon violated Dr. Cubin's free speech rights and right to petition under the Wyoming State constitution**

94. Dr. Cubin incorporates the preceding paragraphs by reference.

95. Article 1, Section 20 of the Wyoming constitution provides that "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right; and in all trials for libel, both civil and criminal, the truth, when published with good intent and [for] justifiable ends, shall be a sufficient defense, the jury having the right to determine the facts and the law, under direction of the court."

96. Article 1, Section 21 of the Wyoming constitution provides that, "The right of petition, and of the people peaceably to assemble to consult for the common good, and to make known their opinions, shall never be denied or abridged."

97. The Wyoming State constitution "is broader than that found in the First Amendment to the United States Constitution in that it also guarantees the right to publish which includes the right not only to speak and to write but also to make the same known." *Tate v. Akers*, 409 F. Supp. 978, 981–82 (D. Wyo. 1976) (citing *South Holland v. Stein*, 373 Ill. 472, 26 N.E.2d 868 (1940)).

98. By removing Dr. Cubin from the Board in retaliation for engaging in protected free speech and his right to petition, Governor Gordon violated Dr. Cubin's rights under Article 1, Sections 20 and 21 of the Wyoming constitution.

99. Dr. Cubin has suffered reputational and professional harm as a licensed Wyoming physician formerly in good standing as a member on the Board, arising from Governor Gordon's adverse actions.

100. Therefore, Dr. Cubin is entitled to declaratory and injunctive relief against Governor Gordon for violating his free speech rights and right to petition under the Wyoming State constitution.

## **PRAYER FOR RELIEF**

Plaintiff Dr. Eric Cubin respectfully requests that this Court provide the following relief:

A. Under Counts I, II, and III a preliminary and permanent injunction ordering Governor Gordon to restore Dr. Cubin to his position on the Wyoming Board of Medicine;

B. Under Counts I, II, and III a declaratory judgment declaring that Governor Gordon violated Dr. Cubin's free speech rights and right to petition under the First Amendment and Article I, Sections 20 & 21 of the Wyoming constitution;

C. Under Counts I and II, monetary damages against Governor Gordon in his personal capacity in an amount to be determined at trial;

D. A jury to be empaneled;

E. Attorney's fees and costs as a prevailing party under Counts I and II pursuant to 42 U.S.C. § 1988; and

F. All further relief that the Court deems just, proper, or equitable.

Dated: August 29, 2024                Respectfully submitted,

                                      s/ D. Stephen Melchior
                                      D. Stephen Melchior
                                      Melchior Law Firm, P.C.
                                      2010 Warren Avenue
                                      Cheyenne, WY 82001
                                      (307) 637-2323 - telephone
                                      steve@melchlaw.com

18

M.E. Buck Dougherty III*
LIBERTY JUSTICE CENTER
13341 W. U.S. Highway 290
Building 2
Austin, TX 78737
(512) 481-4400 - telephone
bdoughherty@libertyjusticecenter.com

*Pro hac vice admission forthcoming*

*Attorneys for Plaintiff Dr. Eric Cubin*